### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS

Tango Smith Jr.                                                            **Plaintiff**

v.                                    No. 4:14-CV–130-DPM-JTK

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                            **Defendant**

### Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge

D.P. Marshall.  A party to this dispute may file written objections to this

recommendation.  An objection must be specific and state the factual and/or legal basis

for the objection.  An objection to a factual finding must identify the finding and the

evidence supporting the objection.  Objections must be filed with the clerk of the court

no later than 14 days from the date of this recommendation.[1]  The objecting party must

serve the opposing party with a copy of an objection.  Failing to object within 14 days

waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Marshall

may adopt the recommended disposition without independently reviewing all of the

record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections
waives right to de novo review and to appeal magistrate judge's findings of fact).

## Reasoning for Recommended Disposition

Tango Smith Jr. seeks judicial review of the denial of his application for disability benefits.[3]  Smith last worked as a cashier for a gas station convenience store.[4]  He stopped working in April 2010.  His reasons for not working vary.[5]

This case considers Smith fourth application.  The first application was approved; Smith received disability benefits from 1994 to 2001.[6]  The second application was denied on November 27, 2002; the third was denied on September 10, 2010.[7]  The denial of the third application fore-closed eligibility for early benefits,[8] so this case considers whether Smith was disabled beginning September 11, 2010.[9]  Smith bases

---

[3]SSA record at pp. 156 & 160.

[4]*Id*. at pp. 191 & 207.

[5]*Compare id*. at p. 190 (stopped working due to my condition) *with id*. at p. 375 (fired because of a conflict with my manager).

[6]*Id*. at p. 186.

[7]*Id*.

[8]*Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010) ("The law-of-the-case doctrine generally prevents relitigation of an issue previously resolved, and requires courts to adhere to decisions rendered in earlier proceedings. This doctrine applies to administrative agencies on remand.").

[9]The challenged decision erroneously cited Smith's original onset date — June 15, 2007 — but during his hearing, Smith amended his onset date to September 11, 2010, based on the denial of the third application. SSA record at p. 33.  Smith did not ask the ALJ to reopen the second application.  *Id*.  Smith was not eligible for disability benefits before September 11, 2010, because he was either incarcerated or worked full-time.

disability on the human immunodeficiency virus (HIV), peripheral artery disease, arthritis, and sleep apnea.[10]

**The Commissioner's decision**.  After considering the third application, the ALJ determined Smith has severe impairments — degenerative disc disease, history of right ankle fracture, HIV-positive, history of sleep apnea, and status-post ascending aortic repair/femoral bypass[11] — but he can do some sedentary work.[12]  Because a vocational expert identified available sedentary work,[13] the ALJ determined Smith is not disabled and denied the application.[14]

---

20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4) (in step one of disability-determination process, the ALJ determines whether the claimant engaged in substantial gainful activity; claimant who works at substantial-gainful-activity level is not eligible for disability insurance benefits); 42 U.S.C.A. § 402(x)(1) ("no monthly benefits shall be paid … to any individual … during a period of more than 30 days … such individual … is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense); 20 C.F.R. § 404.468 ("No monthly benefits will be paid to any individual for any month any part of which the individual is confined in a jail, prison, or other penal institution or correctional facility for conviction of a felony."). Under the circumstances of this case, the reference to the original onset date constitutes a scrivener's error.

[10]SSA record at p. 190.

[11]*Id*. at p. 16.

[12]*Id*. at p. 19.

[13]*Id*. at pp. 56-57.

[14]*Id*. at p. 24.

After the Appeals Council denied review,[15] the ALJ's decision became the

Commissioner's final decision for the purpose of judicial review.[16]  Smith  filed this case

to challenge the decision.[17]  In reviewing the decision, the court must determine

whether substantial evidence supports the decision and whether the ALJ made a legal

error.[18]  This recommendation explains why substantial evidence supports the decision

and why the ALJ made no legal error.

    **Smith's allegations**.  Smith challenges the determination that he can do some

sedentary work; he claims fatigue and drowsiness prevent him from working and

necessitate extra work breaks.  He contends the ALJ failed to properly evaluate his

credibility and characterizes the credibility evaluation as meaningless boilerplate.  He

complains about the ALJ's reliance on agency medical experts because their opinions

---

[15]*Id*. at p. 1.

[16]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social
Security Act precludes general federal subject matter jurisdiction until administrative
remedies have been exhausted" and explaining that the Commissioner's appeal
procedure permits claimants to appeal only final decisions).

[17]Docket entry # 1.

[18]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the
Commissioner's findings are supported by substantial evidence and whether the
Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187
(8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant
disability benefits if the decision is not based on legal error and if there is substantial
evidence in the record as a whole to support the conclusion that the claimant was not
disabled.").

predate his heart surgery.  For these reasons, he maintains substantial evidence does not support the ALJ's decision.[19]

**Applicable legal principles**.  For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Smith can do some sedentary work.[20]  Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[21] Sedentary work "represents a significantly restricted range of work.  Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations."[22]

The ALJ placed several limitations on sedentary work:

> (1) occasional climbing, balancing, stooping, kneeling, climbing, crouching, and crawling;
>
> (2) no concentrated exposure to air pollutants; and
>
> (3) no unprotected heights, dangerous machinery/

---

[19]Docket entry # 15.

[20]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

[21]20 C.F.R. §§ 404.1567(a) & 416.967(a).

[22]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

equipment, or motor vehicles.[23]

The court must determine whether a reasonable mind would accept the evidence as adequate to show Smith can work within these parameters.

**Smith can work within the ALJ's parameters**.  A reasonable mind would accept the evidence as adequate because the medical evidence shows no serious functional limitation preventing sedentary work and because a vocational expert identified available work.  When asked to identify the biggest problem preventing him from working, Smith identified his legs.[24]  He wasn't specific about his limitations, but he suggested his HIV-positive status and congestive heart failure prevent him from working.

Smith's allegations are not enough to prove he is disabled because a determination of disability must be supported by medical evidence.[25]  The ALJ followed the required two-step process and considered the required factors[26] to evaluate Smith's

---

[23]SSA record at p. 19.

[24]*Id*. at p. 40.

[25]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability …; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment … which could reasonably be expected to produce the pain or other symptoms alleged and which … would lead to a conclusion that the individual is under a disability.").

[26]*See* SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

allegations, so the dispositive question is whether substantial evidence supports the decision.  The relevant medical evidence shows no serious functional limitation preventing sedentary work within the ALJ's parameters.[27]

**The medical evidence shows HIV has responded to treatment**.  According to Smith, he tested positive for HIV in 2001.[28]  HIV "damages the immune system, leaving [a person] vulnerable to certain cancerous tumors and increasingly severe opportunistic infections."[29]  "When a person tests positive for HIV infection, the doctor …measure[s] the amount of virus in the patient's blood.  This level is called the viral load.  The viral load helps the doctor to decide when to start drug treatment for HIV."[30]  Stable or increasing viral load indicates disease progression and/or treatment failure; decreasing viral load indicates response to treatment.  The treatment goal is an undetectable viral load — under 40 to 75, depending on the testing laboratory.

Smith's viral load has been undetectable.[31]  The last time Smith was tested — in

---

[27]Some of the medical evidence predates the time period for which benefits were denied.

[28]SSA record at p. 336.

[29]Genevieve Pham Kanter, Tish Davidson & Rebecca J. Frey, 1 The Gale Encyclopedia of Med. 91 (4th Ed.).

[30]*Id*. at pp. 97-98.

[31]*See* SSA record at p. 357 (Feb. 25, 2009: less than 48), p. 353 (June 24, 2009: less than 48), p. 349 (Oct. 21, 2009: less than 48) & p. 361 (Feb. 23, 2011: less than 40).  *But see id*. at p. 365 (Sept. 29, 2010: 1,280).

February 2011 — his HIV viral load was 40.[32]  His viral load was detectable in

September 2010, but Smith missed his antiviral medication during a three-month

incarceration.[33]  Smith has no HIV-related symptoms.  A reasonable mind would accept

the evidence about HIV as adequate to support the ALJ's decision because Smith viral

load is undetectable and he has no HIV-related symptoms.

**Right ankle pain doesn't prevent Smith from doing sedentary work**.  Smith's

right ankle was fractured in June 2007.[34]  The fracture healed, but with some deformity

in the angulation of the ankle.[35]  Right ankle pain prevents Smith from walking on his

heels or toes, but he has a normal gait.[36]

The ALJ's reference to degenerative disc disease is a likely an erroneous finding

for degenerative joint disease in the right ankle.[37]  Walking or standing a lot probably

causes some right-ankle pain, but sedentary work doesn't require much standing or

---

[32]*Id*. at p. 361.

[33]*Id*. at p. 329.

[34]*Id*. at p. 247 (emergency room visit after twisting ankle).

[35]*Id*. at p. 322 (diagnostic imaging of right ankle).

[36]*Id*. at p. 371 (agency physical exam).  *See also id*. at p. 525 (May 25, 2012, walks without any difficulty).

[37]Degenerative disc disease refers to the spine; degenerative joint disease refers to a joint like an ankle.  There is no evidence of degenerative disc disease, but the most recent diagnostic imaging shows some bone spurring characteristic of degenerative joint disease.  *Id*. at p. 322.

walking.  A reasonable mind would accept the evidence as adequate to show Smith can do sedentary work because the ALJ required mostly sitting, limited postural functions that might aggravate Smith's pain, and eliminated workplace hazards.

**The record shows no impairment from sleep apnea**.  Smith isn't sure about why he received disability benefits in the past, but he thinks it was for sleep apnea.[38]  If sleep apnea was the reason, the cessation of benefits in 2001 indicates it no longer posed a disability.  There is no evidence of sleep apnea in the record before the court.  Without medical evidence, Smith cannot qualify for disability benefits based on sleep apnea.  A reasonable mind would accept the evidence as adequate to show Smith can do sedentary work because there is evidence of sleep apnea.

**Despite heart surgery, Smith is "doing quite well**."[39]  In December 2011 — ten months after applying for disability benefits — Smith presented to the emergency room and complained about chest pain radiating down the left leg.[40]  Smith had aortic dissection,[41] "a rare, but potentially fatal, condition in which blood passes through the

---

[38]*Id*. at p. 49.  Smith reported a gastric bypass in 1994.  That surgery and the associated weight may have served as sources of disability.

[39]*Id*. at p. 525.

[40]*Id*. at p. 416.

[41]*Id*. at p. 428 (vascular surgery consult).

inner lining and between the layers of the aorta."[42]  In addition, one of the major arteries in the neck and a large artery in the thigh were blocked.  Smith underwent immediate surgery to repair the damaged aorta and restore blood flow,[43] but he had some complications.[44]  Smith remained on a ventilator for a couple of weeks.

By the end of January 2012, Smith had recovered.  He had no complaints, but he was smoking "despite strict recommendations … not to use any substances or tobacco smoking."[45]  In May 2012, Smith denied leg, abdominal, or back pain.[46]  Despite incarceration, he was walking without difficulty, eating well, gaining weight, and "doing quite well."[47]  A reasonable mind would accept the evidence as adequate to show Smith can do sedentary work because Smith is doing quite well.

**According to agency medical experts, Smith can do sedentary work with**

---

[42]John T. Lohr, 1 The Gale Encyclopedia of Med. 436 (4th ed.).

[43]SSA record at p. 430 (Dec. 14, 2011, operative report for repair of aortic dissection and femoral bypass in left leg) & p. 537 (take to operating room immediately).

[44]*Id*. at p. 439 (Dec. 20, 2011, operative report for evacuation of right hemothorax and irrigation of right thoracic cavity, after discovering increased white cell count and blood culture from picc line grew gram-negative bacilli), p. 442 (Dec. 27, 2011, operative report for picc line replacement) & p. 444 (Dec. 29, 2011, operative report for tracheotomy, after developing respiratory failure during 10-day hospitalization).

[45]*Id*. at p. 537.

[46]*Id*. at p. 524.

[47]*Id*. at p. 525.

**postural limitations.**[48]  Even though expert opinion predates Smith's heart surgery, treatment records show no basis for further reducing Smith's ability to work.  Prior to heart surgery, the agency physical examiner reported a mild limitation in standing and walking,[49] but the agency experts reduced Smith's ability to work based on obesity and right ankle pain.[50]  The ALJ further limited Smith's ability to work based on complaints of fatigue and drowsiness.[51]  Despite allegations of disabling limitation, Smith does more than sedentary work.[52]  Smith has no problems with sitting, using his hands, or reaching.[53]  No evidence shows he needs extra work breaks.

**Vocational evidence supports the ALJ's decision**.  The ALJ asked a vocational expert about sedentary work for a person with Smith's limitations.[54]  The vocational expert identified inspecting jobs like table worker, and assembly jobs like fishing reel assembler, as representative work.[55]  The vocational expert's response shows work

[48]*Id*. at pp. 399 & 414.

[49]*Id*. at p. 372.

[50]*Id*. at p. 406.

[51]*Id*. at pp. 21-22.

[52]*Id*. at p. 34 (he can drive for eight hours at a time) & pp. 46-47 (he cooks all meals for himself and mother, and cleans the house).

[53]*Id*. at pp. 204 & 371.

[54]*Id*. at pp. 56-57.

[55]*Id*.

exists that Smith can do, regardless of whether such work exists where he lives, whether a job vacancy exists, or whether he would be hired if he applied for work.[56]  Because such work exists, Smith is not disabled under social security law.

Smith's complaint about the ALJ's hypothetical question fails because the question captured the concrete consequences of Smith's deficiencies.[57]  The ALJ captured the consequences of fatigue and drowsiness by requiring sedentary work and eliminating protected heights, dangerous machinery/equipment, and motor vehicles.

### Conclusion and Recommended Disposition

Substantial evidence supports the ALJ's decision because a reasonable mind would accept the evidence as adequate to support the decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Smith's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 2nd day of December 2014.

_____

United States Magistrate Judge

---

[56]42 U.S.C. § 1382c(a)(3)(B) (defining "disability" under social security law).

[57]*Perkins v. Astrue*, 648 F.3d 892, 901-02 (8th Cir. 2011) ("The hypothetical question must capture the concrete consequences of the claimant's deficiencies.").